May it please the court, my name is Jordan Kushner and I represent the defendant or the appellant Jose Vera-Gutierrez. I'll be addressing a straightforward evidentiary issue in this case, challenging the trial court's admission of summary charts that were complete hearsay without, admitted without proper foundation and charts that contain very important, very important objective evidence and actually the only objective evidence on key points that the government needed to prove in order to get a conviction. Does the record indicate, I didn't have time to look at it, did the defense counsel have an opportunity to examine the underlying phone records? That's not, I don't believe that's indicated in the records. I was a defense counsel. I did receive a lot of discovery and I fully expected to be able to challenge the proper foundation for the evidence if the government, when the government provided a foundational witnesses. Leaving that aside, when there was an objection to the charts and it was a foundation objection, that's the way it's described. On exhibit 113 it was a foundation objection and then on the other exhibits it was foundation and hearsay. And you know the exhibit 13 should have been hearsay too. How was the foundation objection articulated? Well first was objection, lack of foundation and it was overruled by the court. Was it addressed to the chart or to the underlying data? It was addressed to the chart and moved for its admission and the objection was objection lack of foundation and the court overruled it. Well that should be overruled, shouldn't it, if the preparer of the chart is there to testify? Well the preparer of the chart is there to testify but the underlying data, but the preparer of the chart had no information about the underlying data. Was that objected? Was that the basis of the objection? Do we know whether the district court, how the issue was presented further to the district court later on? After the verdict, you mean? Well after the verdict and before the verdict. I mean I went back and revisited, asked the court to revisit the issue so I could make a record. So there is further discussion about it. But you know the district court has a responsibility, I don't want to interrupt, the district court has a responsibility not to admit evidence that hasn't had established foundation. So it's clear that if anyone... Did the words 1006 come up in the colloquy? No, there was no mention of 1006 until the appeal. Well but wouldn't the district court, if the objection was to foundation, without an articulation that the concern was the underlying data, wouldn't the district court be entitled to a 1006 objection? The objection was to lack of foundation for the chart. Well it wouldn't have been admissible under 1006. There wasn't foundation established for 1006 either because that wasn't mentioned, but I think the court... The government doesn't have to cite rules of evidence. Well I think the court, the district court has an obligation to make sure that there's foundation for evidence before it's admitted. And so the district court could have, you know, was in a position to know that this police officer who was called to testify was... He got this data from the phone company. He didn't have specific knowledge of the data. He took the data from the phone company and put it in a chart. That was what was presented to the judge. So I think any competent trial judge, and this judge is certainly a competent trial judge, would know this witness did not have foundation to admit this data. But it was discussed in more depth. If that objection was made known, but the district courts don't have an obligation to respond to figure out every conceivable objection that might be made, did the court explain the basis for the ruling or just deny? Yeah, it denied it. You know, I think that the court had an obligation to... If it wasn't sure about the basis for an objection, the district court had an obligation to hear arguments from the attorneys, which it did in other... Which it did on with respect to other evidence. Wait a minute. Objection found lack of foundation. That means to the document that's being presented. It means it's the document that's... Well, it's the evidence in the document. The document contains evidence. So there's not foundation for evidence in the documents. Now you got to give me case law supporting this assertion that an objection to the foundation for a summary document necessarily and inherently includes foundation for the underlying data. Well, it's a summary document. So that's... I mean, well, what else would the foundation be other than the data that's in the documents? I mean, that's the only reason that the document would be inadmissible, because the information in the document doesn't have foundation. No, because the court says there's the... We have the witness that prepared the document. That witness can present foundation for it, and it can be cross-examined on the data. Well, then the court would frankly be flat out wrong, because the court has a responsibility to know that the witness has foundation to introduce the data. You've tried more cases than I have. That's why I want to hear your rules. I want to hear your rules of evidence authorities. So what happened... So the authority is... The obligation of the counsel is to state the proper objection. And then the court, if it doesn't have enough information to rule on the objection, it can seek more discussion from the counsel, more argument from counsel outside the presence of the jury. You know, that's what happens in a criminal trial. What is this district court's method for dealing with that? Does this court like explanatory objections, or are you instructed to give just a straightforward one or two word objection? My understanding from trying cases in federal court is I would be chastised, if not disciplined, if I started to give an explanatory objection in front of the jury, because you don't want the jury to hear about those underlying technical arguments. You would not be criticized to ask if we could approach the bench. Yeah, that's correct. I could have asked to approach the bench. You know, at the time I was shocked that the court would have omitted a chart from a witness that had no foundation to testify about the chart and not hear anything further on it, so the judge summarily denied the objection. And I did bring the issue to the attention of the court later on during the trial with respect to that exhibit and the other exhibits. And so the merits of those exhibits were argued extensively in front of the bench, you know, later during the course of the trial. I just frankly don't see how there would be any basis to say that the objections weren't adequately presented at trial. But yeah, I can look at my brief and tell you the citations as to where the objections were discussed. Well, that's all right. We can find it. Go ahead. When the parties submitted their proposed jury instructions, there was a proposed instruction on 1006. So it seems that this was anticipated. Is that fair, that these summary charts would be offered? I think that the charts were anticipated, they were exhibits, but it was also anticipated that there would be a foundational witness to explain why the information in these charts are valid. So the charts weren't a surprise to you? The charts, I think, were presented ahead of time. But the expectation is that the government would provide the appropriate witness to lay foundation for the chart. The government argued it could have provided certification, but there's no certification of the chart. The chart is summary from other evidence. So they could have provided the underlying cell phone records and done certification. They didn't do that. So all they presented for an exhibit was a chart, and so the expectation would be, well, they're going to provide a witness who actually has foundation to testify about the information in these charts so that we can address it on cross-examination. The government jumps pretty quickly in its briefing to harmless error. This was a wiretap case, correct? So there is a lot of other evidence data that was introduced. Your position is this is not harmless. What is it about these particular exhibits, these three, that make you believe it's not harmless? Well, the first, Exhibit 113, this chart of the cell phone calls, that's the only objective evidence that my client had conversations with this alleged third participant to this conspiracy, Mr. Cota. So Mr. Cota was one of the indicted defendants. I guess he absconded, so he wasn't at trial. We never heard from him. But the only critical part of this conspiracy theory is that there was basically a triangle. So my client and Mr. Castro talked. There was a lot of wiretaps of their conversation. And he also, both of them were also in contact with Mr. Cota. And it was Mr. Gutierrez who had arranged the contact. And it's vague. Mr. Gutierrez never mentions him by name. There's only reference to some old guy in Arizona. And so this Exhibit 113 is the only objective evidence, and really the only direct evidence of any sort, that those two had conversations. There was actually dozens of phone calls in that chart that are listed of calls in between my client and Mr. Cota. There was calls at the same time as this alleged deal was being arranged with Mr. Castro, where they were talking back and forth. So this corroborates that there was phone contact between my client and Mr. Cota. Without that, we could say there's no evidence that those two ever talked to each other. This was just between Mr. Castro and Mr. Cota. My client had nothing to do with arranging this drug deal. He just mentioned the name of someone in Arizona to contact. And we don't know what it was about, and we don't even know if it was the same person. But now we have this chart that identifies both their cell phone numbers and shows numerous calls back and forth between them. And then after Mr. Castro gets caught, the chart then shows that there's conversations where Mr. Cota attempts repeatedly to call my client. And so, hey, the government can say, hey, you know, obviously he's involved. Mr. Cota's trying to call him right after Mr. Castro gets arrested, and there wouldn't have been any other such evidence otherwise. I thought some of those calls were tapped and played. No, no, there was no calls between my client and Mr. Cota that were ever tapped. No, the calls after the stop in which it's pretty obvious from what your client and who was the other, Castro, I guess, was discussing and Cota was involved, and then we have Cota's car show up at the defendant's residence. Right. Those were tapped calls, right? There was no calls between my client and Mr. Cota. His contact with Mr. Castro was done after Mr. Castro was arrested. I know, because those were highlighted in the chart, I guess, in the briefs, the ones that were not tapped. Either you were highlighted or not highlighted. There's a lot of tapped calls between my client and Mr. Castro, many tapped calls. A lot of them were about an undisputably legitimate subject matter, and then there was alleged drug conversations that were based on code, no specific mention of drugs, but no evidence otherwise of contact between my client and Mr. Cota. And then the self-cite data, which purports to... It strikes me that on the harmless error, the issue would be whether the tapped calls would provide corroboration, that it wasn't inadvertent that the car that showed up, the white Toyota or whatever it was, in your client's driveway the next day was, in fact, Cota's car, and it was there because of the stop. And then that self-cite data, Exhibit 125, provides us critical evidence to show that Mr. Cota went to my client's house. There isn't strong evidence to show that otherwise. There's an agent who said he saw the car there, but he didn't take a picture of it, didn't identify any people that were present, very vague testimony. So this is solid evidence to a jury that Mr. Cota did go to my client's house. And so that's the other real critical aspect of this evidence that shouldn't have come in. So I guess I'll reserve whatever time is left for rebuttal. May it please the Court. Counsel. Good morning, Your Honors. Good morning, Counsel. David Gennark on behalf of the government, AUSA here in the District of Minnesota. So I'd like to just preliminarily say that the government will rest on the briefs with respect to obstruction and with respect to the sets of reasonableness arguments. I would like to just make one point with respect to the harmless air standard and then move to this areas of inquiry that the Court had of Mr. Kushner. With respect to the harmless air standard, I would just note that at page 8 of defendant's reply brief, he cites Chapman as requiring beyond a reasonable doubt proof that the air had no effect on the jury's verdict. And the government's position is that that is a harmless constitutional air standard and this is an evidentiary air case and that the case is in the government's brief citing this court's standard, which is that if there's any air, it not have a substantial impact on the verdict, is the appropriate one in this case. Now with respect to the context for the objection at trial and the harmless air analysis you inquired about, Judge Kelly, I would like to give the Court some context as to what led up to offering of the chart and the Court's decision to admit it. So defendant asserts in his reply brief at page 2 that the first time the government relied on 1006 was on this appeal and the defendant repeated that assertion this morning. That's simply not true. If you start at the record at district court docket number 147 at page 8, this is the government's trial brief submitted one month before trial. The government states that the government identified telephone records as business records, which would be admitted pursuant to a certificate of authenticity if required. The government further noticed one month before trial that it intended to introduce summary exhibits to show, quote, data obtained through court-ordered pen registers and location trackers, close quote. As Judge Kelly pointed out in the government's proposed jury instructions also submitted one month before trial, the government's proposed instruction number 33 at page 47 was entitled Rule 1006 Summaries and cited to this Court's pattern jury instruction also entitled 1006 Summaries. Was that instruction given? That instruction was given as instruction number 7 in the final jury instructions, and it was discussed as the Court's proposed instruction number 8 at the charge conference during trial. With respect to the discussion of the draft instruction, which the Court could find at district court docket number, I don't have the docket number, but it was filed on June 26 at page 8. This is the proposed draft instruction 8. The district court cited to 4.12, this Court's pattern as to Rule 1006 Summaries, noted that there had been summaries and charts admitted into evidence and that the jury could use those charts even if the underlying documents had not been admitted, and that instruction drew no objection from the defense. Now, at the trial transcript pages 1014 to 1021, there is a discussion of proposed instruction 8, and the Court will see in that discussion that the Court and the defense and the government all agree that this proposed instruction number 8, which is the 8th Circuit pattern on 1006 Summaries, applies to Exhibits 113, 114, and 125. So during the charge conference, all three parties had the same understanding, and that's that those three exhibits were admitted pursuant to 1006, and that's why this proposed instruction was included in the instructions. Was there any discussion of stipulating to that? Was there any discussion pretrial about the underlying data and whether there would be any waiver of foundation? I was not the trial attorney, and I don't think there's a record as to the pretrial discussions between counsel. I will say that on page 4 of the defendant's reply brief in footnote 1, the defendant indicates that the government's disclosure of both the chart and underlying materials to the defense in the instant case was similarly insufficient. Now the defendant's argument there is that providing the charts, in his view, isn't enough, but there doesn't appear to be a dispute, and I didn't hear one during the opening argument here, that the government did provide the charts and the underlying data in advance, and that's certainly the government's position. Now wait, counsel said he didn't think so, that the underlying data was provided to the defense in advance. So where do we go on the record to confirm that? I don't think that's a matter of record. I read the pretrial conference in the case, and I don't see a discussion of that particular issue. Well, how can you state then that it was? What I'm suggesting, Your Honor, is that in the defendant's reply brief, the defendant asserts the government's disclosure of both the chart and underlying materials to the defense in the instant case was similarly insufficient. It was the government's burden to establish that the data underlying the charts was admissible evidence. So I agree with the court. As far as I can tell from the record, you won't find a record site where the parties discussed with the district court the discovery in the case, which is what the court is addressing. But I didn't hear the defense counsel this morning, and I apologize if I misheard, saying that the government didn't disclose this before either trial or offering the exhibit, but I do read the defendant's footnote as suggesting that the government did. So what is your view on the exhibit? Was it error for the district court to overrule that objection based on foundation? Your Honor, it was not error based on foundation. Just could I indulge one final point with respect to the record on 1006, and that's that in the Rule 33 post-trial motion for a new trial, the defendant argued for a new trial based on the erroneous admission of these exhibits, and at district court docket number 203 in the government's opposition, we cited 1006 in the discussion I've just given. So there's no question that this was discussed below as a 1006 exhibit. Your Honor, I do think the exhibits had appropriate foundation, and I would start with the standard of review here as it dovetails with the nature of the objection. So the objection at trial was simply stated foundation, which was overruled. And when this court reviews whether under this court's standards there was a clear and prejudicial abuse of discretion, I think informed by Judge Loken's questions, the district court had no specific basis here from the defense, no request to approach, no request for voir dire, and no cross-examination of the witness as to reliability of these exhibits. And if the court examines page – Is there case law on the question of whether an objection to an exhibit offered under 1006, and a foundation objection includes an objection to the underlying data? No. I think what this court would need to look at is the court's case law as to how specific an objection has to be. The government considered arguing plein air in this case that the – I would think just – I mean, I haven't had the situation come up as a trial lawyer, but I would think it would be the cross-exam of the witness who prepared the chart and has foundation for the chart that would reveal whether there was a foundation problem with the underlying data, and then the defense would pursue that. Exactly right, Your Honor. And Rule 1006 explicitly provides for that dynamic because it requires that the witness who prepared the chart is the one who offers it, is available for cross-examination subject to the underlying documents. The rule codifies the approach that the court is describing. Now, to Judge Kelly's question, the court's concern about foundation, Rule 1006 requires three things, that the data be voluminous, that the chart help the jury, and that the witness be available for cross – the witness who prepared it be available for cross-examination with the underlying documents. Those were all satisfied. This case, this court's Ford decision, says that the data underlying the summary charts must, too, be admissible, but it doesn't say that the data must be admitted. But it – so the question, yes, it doesn't have to be admitted, but it does have to be admissible, and if, in fact, defense counsel had followed up with the voir dire question or the cross-examination questions that you've suggested were open to him, then what would have happened? Would then government counsels basically have to concede, yes, now I am going to have to put on or at least show up that these underlying documents are admissible? Your Honor, I think the answer to that question is the government would have offered a 902.11 certificate from the phone companies to admit the toll records in their full grandeur, all 1,000 line items or whatever they were, which is a typical practice every day in every district in the Eighth Circuit. And business records are recognized. In fact, the defendant in his brief notes that phone records are routinely admitted pursuant to the business records exception. So I guess then the answer to the question would be then the government would have recognized that, oh, we need to shore up this foundation here. I mean, you're suggesting it would have been a fairly straightforward task, but you're not suggesting it wouldn't have been necessary. That was kind of a negative question, but you're not suggesting that that wouldn't have been necessary to establish the admissibility then of 113, 114, 125. I think so, Your Honor. I'm not suggesting the government would have had to admit the underlying data. It's clear that it would not, but it would have had to satisfy the court that the underlying data was admissible. I think to the court's question, you actually find the answer in the transcript with respect to Exhibit 120. And I'd refer the court to trial transcripts at 361 to 362 and trial transcript at 527 to 529. Exhibit 120 was a document that included the check-in records of Castro and Cota when they were in Utah on their way back from Arizona to Minnesota. And at 361 to 362, the government attempted to admit Exhibit 120, these Best Western Hotel records. The defendant objected as to foundation. There was a sidebar. The government said, I'll withdraw the exhibit now, because here we're trying to admit the actual data, the actual record. I'll withdraw the exhibit tomorrow and I'll come back tomorrow with the 902.11 certificate. And at trial transcript 527 to 529 the next day, you'll see that the government offers Exhibit 120. There's another sidebar. It has the 902.11 certificate, and Exhibit 120 is admitted by the court. So had there been a dynamic here where the government, with either a concern of the court or a specific objection from the defendant, had to establish the admissibility of phone records, it would have been literally a ministerial task to deliver the 902.11 to the court. And I know you weren't trial counsel, so maybe you can't, and maybe this is not in the record. But what was the government's view of that foundation objection, if not for the admissibility ruling of the underlying data? It could have been anything that Judge Loken cited, anything related to the 1006 standards. It could have been that the data wasn't voluminous. It could have been that they didn't think the chart was helpful to the jury. It could have been if they challenged this wasn't the witness who prepared it. It could have been they didn't have the underlying data. You just don't. Exactly. Now, if we rewind, for example, Exhibit 113, which was the sites where that was admitted are in the party's briefs. But Exhibit 113, what preceded admission of Exhibit 113, is the government saying to the witness, where did you get these records from the phone companies? Are they voluminous? Yeah, no one would want to look through all these records. They include calls from Castro to the pizza delivery service. It would be a waste of time to have all these records before the court. What did you do with them? Well, I culled the toll records that relate to these particular defendants and I put them in a chart, and I also cross-referenced them to all of the wiretap calls that did duplicate what was in Exhibit 113, and that was 278 of 350-odd line items were duplicated by a wiretap with respect to harmless air. So I think to the court's question, the government felt and did provide adequate foundation. It provided the witness. There was no dispute it hadn't provided the data. It was voluminous, and this was going to be helpful to the jury. So I don't think the jury, the government, had anything in its mind with respect to any deficiency on foundation. I would like to turn to a couple of quick notes made by the defendant with my last two minutes, certainly to be interrupted by the court as you have questions. But it's simply not true that the only evidence in the record of contact between defendant and CODA was Exhibit 113. And I'd point the court to three examples. The trial transcript at 6.04, Castro's testifying as to a recorded wiretap call, and on the call, CODA in Arizona is recorded saying to Castro, hey, and I can provide the quote to the court, no, well, with the cousin, with the cousin, with Jose. So CODA uses Jose's name in connection with a wiretap call, referring to conversations that CODA is having with defendant. At trial transcript 313 to 316, on a wiretap call, defendant refers to the man coming along with Castro to Minnesota when they're delivering 24 pounds of pure methamphetamine seized by law enforcement. It refers to the man coming too, and that's corroborated because CODA does indeed come with Castro to Minnesota. And at trial transcript 335, 340 to 414, and 623, and these are all in the government's brief at pages three to six, defendant says that he's being told one thing by the man about when the delivery will occur and another thing by Castro. But, again, as the government argument is brief, the court could eliminate the evidence in 113 related to those phone calls of contacts between the defendant and CODA, and the evidence in this case is still overwhelming. There's no threat here that these three summary exhibits had a substantial effect on the jury's verdict. When you've got 110 wiretaps, the testimony of Castro as to the content of the wiretaps, the testimony of CODA's girlfriend, wife, as to the trip, and all the other corroborations cited by the government. Unless the court had any other further questions, I'd ask you to affirm the judgment. Thank you. Thank you. Mr. Kushner. So there is, I think the court acknowledged it, but there is extensive case law from other circuits making clear that Exhibit 1006 evidence is not admissible unless the underlying evidence has, unless the foundation is established for the underlying evidence. And so that wasn't established. This circuit's a little different, as you know. This circuit's a little different. I didn't find any contrary case law from this circuit to that. We've got several cases that say the summary can be admitted instead of. It can be, as long as the underlying, yes, the summary can be admitted instead of the evidence. Instead of, right. But it still has to be established that that underlying evidence is admissible. You have short time. Go ahead. And that's what the government didn't do. And the discussion at the time of the jury instructions, that was after the evidence had already been admitted. The judge had already made her ruling that it was admissible, and so the question for the jury instruction wasn't whether or not it was admissible, but what was the proper jury instruction. So the objection was clearly made, and there was never any concession that that was evidence. And in reference to Jose, that could be, that's one of the most common Spanish names. It doesn't say anything that Mr. Gutierrez was in contact with Mr. Cota. It's the cell phone records that establish that. Thank you. Counsel, thank you. The case has been thoroughly briefed and well argued. We'll take it under advisement.